# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **M3 USA CORPORATION** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 20-5736** |
| | : | |
| **KARIE HART, *et al.*** | : | |

## **MEMORANDUM**

**KEARNEY, J.**                                                                                                          **July 9, 2021**

Parties choosing to offer a judgment for a sum certain plus "any applicable reasonable attorney's fees and costs" to end a litigation must perform under the terms of their offer when the opposing party accepts. An offer of judgment is a unique procedure under federal law. It is unlike a negotiated settlement agreement reflecting lawyers' consent to specific terms. It is instead a "take it or leave it" based on the words in the offer. A defendant making an offer of judgment for a sum certain plus applicable reasonable attorney's fees and costs must tender the "applicable" reasonable fees and costs if the offer is accepted.

We today address obligations to pay attorney's fees and costs based on language a former employer accepted in an offer of judgment from its former employee and her new employer in a trade secret case. The former employer now moves for its reasonable attorney's fees and costs incurred in this action under the offer of judgment. Counsel for the former employee and her new employer drafted the offer of judgment and now argue their chosen word "applicable," which they placed before "reasonable attorney's fees" in their offer, has no meaning because the former employer is not a prevailing party under the trade secret statutes and fees are not recoverable under the common law.

But counsel for the former employee and her new employer chose the term "applicable" which, at best, suggests there may be some fees regardless of the trade secret statutes. The term

"applicable" is ambiguous; does it mean "eligible" for fees in this case? We must construe "applicable" against the former employee and her new employer. We interpret "applicable" to mean reasonable fees and costs incurred in this case as opposed to statutory eligibility for fees.

We then measure the reasonableness of the attorney's fees incurred by the former employer including the amount of time billed to this matter. We sustain objections to vague billing entries and to charges unrelated to this case. We do not allow fees for work not "applicable" to the case. We otherwise grant the former employer's Petition for fees finding $238,560.13 to be reasonable along with the reimbursement of $69,547.64 in costs with no post-judgment interest under the parties' contract.

## I.      Alleged facts

M3 USA Corporation provides market research recruitment, data collection, and support services in the healthcare industry in the United States, Europe, and Asia.[1] M3 hired Karie Hart as an Inside Sales Manager on May 29, 2009.[2] She signed a Proprietary Information and Inventions Agreement with confidentiality provisions as a condition of her employment.[3] Ms. Hart agreed to "hold in confidence and not disclose or, except within the scope of [her] employment with Company, use any Proprietary Information."[4] In her position with M3, Ms. Hart had access to confidential and proprietary M3 information, including through an M3 provided laptop.[5]

Ms. Hart signed a Confidentiality and Non-Solicitation Agreement as a condition of receiving her commission plan for the year.[6] In exchange for commissions, Ms. Hart agreed to hold M3's trade secret and proprietary information confidential and in a fiduciary capacity and to safeguard such information.[7] She also agreed not to disclose M3's trade secret and proprietary information to a third party during or after her employment, except in the good faith performance of her duties.[8] Ms. Hart also agreed she would not "contact, call upon, encourage or solicit, on

behalf of a Competitive Business . . . , any existing or prospective client or customer of the Company who [she] serviced, or otherwise developed a relationship with, as a result of [her] employment with the Company, nor will [she] attempt to divert or take away from the Company the business of any such client or customer" during her employment and a one year period following the termination of her employment.[9]

M3 promoted Ms. Hart to a Senior Account Manager position in March 2014 followed by another promotion to Vice President of Sales in December 2014.[10] Ms. Hart managed two main accounts, including the BluePrint Research Group account.[11]

On December 19, 2016, two years after Ms. Hart's promotion to Vice President of Sales, M3 and BluePrint entered into a Market Research Master Services Agreement.[12] Under the Master Services Agreement, M3 provided healthcare market research services to BluePrint.[13] M3 alleges it enjoyed a steady and increasing revenue stream with consistent sales from the BluePrint account from 2016 to 2019.[14]

### Ms. Hart leaves M3 in July 2020.

M3's Chief Revenue Officer Indrani DasGupta resigned from M3 on January 1, 2020 to become the Chief Executive Officer of Atlas Primary, Inc., a direct competitor of M3.[15] M3 believed Ms. DasGupta began poaching its employees and clients despite her knowledge, as a former M3 executive, of the confidentiality and restrictive covenant agreements M3 required of its employees.[16]

M3 Project Manager Savanah Haunert resigned from M3 in May 2020 to accept a position as the Director of Market Research Operations at Atlas.[17] M3 alleged Ms. Haunert worked for Ms. Hart on the BluePrint account.[18] M3 also alleged sometime between February and June 2020, Ms. DasGupta spoke to Ms. Hart about joining Atlas.[19] Ms. Hart resigned from M3's employment  on

July 30, 2020 to become an Atlas Senior Vice President beginning August 1, 2020.[20] M3 alleged Ms. Hart admitted to selling a substantial amount of business for Atlas before leaving M3.[21] M3 contends it began losing BluePrint's business beginning in April 2020, with a substantial decline in monthly sales from April to July 2020 compared to the previous year.[22] M3 attributes at least some of its business loss to BluePrint's decision to move its account from M3 to Atlas.[23]

M3 alleged Ms. Hart misappropriated its confidential proprietary information and trade secrets regarding BluePrint before or shortly after leaving its employ.[24] M3 believed Ms. Hart abused her access to its market research system and other client-related files on her M3-provided laptop to obtain trade secret information and gain a competitive advantage for Atlas, violating M3's policies and employee handbook, and her signed agreements.[25] M3 also believed Atlas used this stolen information to undercut M3's bids and divert business from M3 to Atlas, and M3 continued to lose BluePrint sales, revenue, bids, and projects to Atlas.[26] Ms. Hart continues to work on the BluePrint account for Atlas.[27]

### *M3 sues Ms. Hart and Atlas.*

M3 sent Ms. Hart and Ms. DasGupta a cease-and-desist letter on September 1, 2020, demanding Ms. Hart and Atlas cease the breach of Ms. Hart's restrictive covenants and demanding the return of M3's confidential information and trade secrets.[28] When the parties could not resolve their issues, M3 sued Ms. Hart and Atlas on November 16, 2020 alleging Ms. Hart breached her restrictive covenants and duty of loyalty to M3 and misappropriated M3 trade secrets and confidential information for the benefit of Atlas.[29] M3 claimed Ms. Hart and Atlas violated the Defend Trade Secrets Act[30] and the Pennsylvania Uniform Trade Secrets Act.[31]

Atlas and Ms. Hart moved to dismiss for lack of personal jurisdiction and failure to state some claims.[32] We granted their motion in part and denied in part.[33] We held a pretrial conference

on February 17, 2021, setting an August 3, 2021 trial date.[34] M3 moved for a preliminary injunction on March 1, 2021, which we denied without prejudice.[35] The parties completed some discovery.[36]

*M3 accepts an offer of judgment including applicable attorney's fees.*

Atlas and Ms. Hart served M3 an offer of judgment under Federal Rule of Civil Procedure 68 on May 6, 2021.[37] The offer of judgment obligated Ms. Hart and Atlas to pay M3 "$75,000 plus any applicable reasonable attorneys' [sic] fees and costs" incurred up to the date of the offer by M3 (with the amount to be determined by us).[38] Ms. Hart and Atlas did not define the term "applicable" in their offer of judgment. They did not address the antecedent question of whether M3 is entitled to fees. M3 accepted the offer of judgment the next day.[39]

We entered judgment of $75,000 in favor of M3 and against Atlas and Ms. Hart on May 11, 2021, pending a final order on potential recovery of reasonable attorney's fees and costs.[40] Acceptance of the offer of judgment released Atlas and Ms. Hart from all claims asserted by M3 in its complaint or claims that could have been asserted.[41]

M3 timely petitioned for reasonable attorney's fees and costs.[42] It initially sought $218,567.50 in attorney's fees and $93,266.27 in costs.[43] M3 later supplemented its petition to correct accounting errors.[44] M3 now seeks $242,238.63 in attorney's fees and $69,574.64 in costs.

## II.    Analysis

Atlas and Ms. Hart oppose M3's petition, arguing it is not entitled to attorney's fees because neither of the restrictive covenants on which M3 sued contain a fee-shifting provision and the American Rule applies to M3's common law claims.[45] Atlas and Ms. Hart concede M3's misappropriation of trade secret claims under the Pennsylvania Uniformed Trade Secrets Act[46] and the Defense of Trade Secrets Act[47] contain fee-shifting provisions which may provide an

award of attorney's fees and costs.[48] But, they argue M3 fails to meet the standard for our discretionary award of fees under the fee-shifting statutes because M3 (1) is not the "prevailing party;" and, (2) failed to prove "willful and malicious" misappropriation of trade secrets by Atlas or Ms. Hart.[49]

Atlas and Ms. Hart argue even if we find M3 is entitled to attorney's fees, its fees are unreasonable.[50] They argue we should either (1) apply a 95% across-the-board reduction to the requested fees to reflect the limited nature of the relief obtained by M3;[51] or, (2) discount $47,730 in objectionable time entries and then apply the 95% across-the-board discount.[52]

Atlas and Ms. Hart contend the $47,730 in objectionable attorney time entries are comprised of: (a) $7,647 in vague attorney billing entries; (b) $16,794 for time attributed to work ineligible for fee-shifting, including time spent on M3's common law breach of contract and breach of loyalty claims, refuting Atlas and Ms. Hart's affirmative defenses to the contract claims, issues relating to Ms. DasGupta's potential liability, and antitrust issues; (c) $18,436 in fees for work on unsuccessful or frivolous motions, including M3's motion for preliminary injunction, a spoliation motion never filed, and a motion to compel against the manufacturer of Ms. Hart's Atlas laptop; (d) $1,126.50 for time related to a different action; and (e) $3,727 in fees for non-attorney work or billing errors.[53]

Atlas and Ms. Hart also object to M3's costs and demand for interest arguing we must (1) reduce $15,508.13 in costs attributed to a contract attorney hired through the Robert Half staffing firm but which are also counted in M3's demand for attorney's fees; (2) deduct $9,336.39 in costs attributed to local counsel fees, consider them as fees and deny them; and (3) deny post-judgment interest.[54]

M3 responds the offer of judgment operates as a contract which expressly includes reasonable attorney's fees, with no limitation other than reasonableness, as part of the offer.[55] It argues the offer of judgment does not reference a statutory or contractual basis for a fee award or otherwise reserve to this Court the question of whether M3 is entitled to a fee award.[56]

M3 supplemented its petition clarifying it mistakenly included both attorney's fees and costs of its local counsel, Buchanan Ingersoll & Rooney, as "fees" rather than pulling out the firm's costs and accounting for them as "costs."[57] M3 concedes a time entry in the amount of $47.50 is related to another case and deducts that amount from its attorney's fees.[58] After these modifications, M3 seeks $242,238.63 in attorney's fees, which includes fees from the Welter Law Firm, P.C., fees from local counsel Buchanan Ingersoll, fees from contract attorneys, and $69,547.64 in costs.[59]

### A.    M3 is entitled to reasonable fees and costs under the offer of judgment.

The question before us turns on whether "applicable" refers to fees and costs incurred for only this case or for fees and costs allowed under law. We may then turn to review the reasonableness of the requested fees if we find "applicable" defines work in furtherance of this matter as opposed to other matters. In other words, if M3's counsel should only be compensated for work leading to this judgment.

Ms. Hart and Atlas's ambiguous "applicable" term is construed against them. Ms. Hart and Atlas offered a judgment in a fee-shifting case but did not eliminate the fee-shifting component.[60] Their choice of ambiguous language is construed against them.

Rule 68 offers of judgment are governed by basic principles of contract law.[61] Ambiguities in Rule 68 offers are resolved against the offerors.[62] Atlas and Ms. Hart's Rule 68 offer allowed judgment against Atlas and Ms. Hart of $75,000, "plus any applicable reasonable attorneys' fees

and costs incurred."[63] Atlas and Ms. Hart argue M3 is not entitled to an award of attorney's fees presumably because it has no "applicable" reasonable attorney's fees. The key word here is "applicable." Atlas and Ms. Hart offered to pay M3's reasonable attorney's fees and costs only if applicable. But applicable to this case or as matter of eligibility under the law?

Under Pennsylvania law, issues of contract interpretation are questions of law.[64] We must interpret a contract in accordance with the parties' intent and, where the contract is clear and unambiguous, we determine the parties' intent from the document itself.[65] Unless defined, a contract's language is given its plain and ordinary meaning.[66]

A contract is ambiguous if it may reasonably be construed in more than one way. Any ambiguities are construed against the contract's drafter.[67] The parties used the term "applicable" and it is ambiguous. "Applicable" modifies "reasonable attorney's fees" to include only those relevant and appropriate under the law. Applicable fees can be construed in two ways: (1) those fees applying to this case, as opposed to other matters improperly billed to this file; or, (2) as permitted by law. The parties do not define which meaning of "applicable" should apply. Finding ambiguity, we construe the word "applicable" in the offer of judgment against Defendants who drafted it.

We are guided by the reasoning of the United States Court of Appeals for the Ninth Circuit in *Miller v. City of Portland* confirming contract principles govern Rule 68 offers.[68] Ms. Miller appealed the district court's denial of her motion for attorney's fees after the parties entered a Rule 68 offer of judgment on her civil rights claims against the City of Portland and three of its police officers.[69] The city offered a judgment of $1,000 plus reasonable attorney's fees to be determined by the district court.[70] The district court denied Ms. Miller's motion finding the $1,000 award *de*

*minimus* under 42 U.S.C. § 1988, the statute providing for attorney's fees for civil rights violations.[71]

The court of appeals addressed a single issue; whether a prevailing plaintiff under an accepted Rule 68 offer providing an award of reasonable attorney's fees is entitled under the offer to a fee award in *some* amount.[72] The court concluded Ms. Miller was entitled to fees because the Rule 68 offer expressly provided for a reasonable fee award.[73] The court of appeals reasoned the district court used the wrong analysis when it applied the standards governing statutory fee awards rather than principles governing contract construction.[74] It concluded because the Rule 68 offer provided Ms. Miller an award of attorney's fees, the district court "did not need to determine *whether* fees should have been awarded" or whether Ms. Miller "was *entitled* to fees under [the statute]" and instead needed only to determine the *amount* of fees to which Ms. Miller was entitled under the Rule 68 offer.[75]

We face a similar issue. M3 is not entitled to fees if we focus on whether it is entitled to fees under applicable law. M3 is entitled to fees if we focus on whether its submitted billings apply to this case. The offeror is responsible for the clarity and precision of the Rule 68 offer.[76] Atlas and Ms. Hart could have clearly stated whether attorney's fees are limited to the statutory claims as part of the judgment if they wished to avoid or limit exposure to attorney's fees in addition to the sum offered.[77]

Ms. Hart and Atlas prepared the offer of judgment. They are the masters of the offer leading to a contract. They did not define "applicable." Their counsel chose not to carefully draft the offer. They chose the term "applicable" which they now argue means the same as "entitled" and, because the American Rule applies to M3's common law claims and because M3 fails to meet the standards under the fee-shifting statutes, there are no "applicable" attorney's fees. But their argument lacks

merit. M3 did not agree to forego attorney's fees. Ms. Hart and Atlas did not suggest they would not pay attorney's fees in a fee shifting case. Their contract language of "applicable" would have no meaning if we read the contract as they suggest. We must try to interpret a contract to give effect to every chosen word.[78] Atlas and Ms. Hart created ambiguity which they could have clarified. Their argument today lacks merit. We will not read the ambiguous "applicable" to benefit Ms. Hart and Atlas to remove all fees in a fee shifting case. We conclude M3 is entitled to all "applicable reasonable" attorney's fees.

### B. We partially sustain Defendants' challenge to the reasonableness of M3's documented fees.

Turning to the amount of attorney's fees, we employ the "lodestar" formula to calculate attorney's fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate, which is presumed to be a reasonable fee.[79] M3, as the party seeking attorney's fees, "has the burden to prove that its request … is reasonable" by "submit[ting] evidence supporting the hours worked and rates claimed."[80] "[T]he party opposing the fee award then has the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee."[81] We have "a positive and affirmative function in the fee fixing process, not merely a passive role" and "[i]n calculating the hours reasonably expended, [we] should 'review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'"[82] In calculating the lodestar, we "may not award less in fees than requested unless the opposing party makes specific objections to the fee request."[83]

### 1. We reject a 95% across-the-board reduction on the attorney's fees.

Ms. Hart and Atlas seek a 95% reduction in the documented fees arguing M3 agreed to a judgment at a substantially lower dollar number than it sought in the case.[84] We disagree.

The Supreme Court in *Hensley* directs us to apply the lodestar as an objective basis to award attorney's fees but it does not end our inquiry. We must consider the "results obtained" as "the most critical factor" in determining an appropriate attorney's fee award.[85] "This factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief."[86] In this situation, we are directed by the Supreme Court to ask two questions: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?"[87]

The Court recognized in some cases "a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories" while in other cases "plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."[88]

The Court also recognized where a plaintiff obtained "excellent results, his attorney should recover a fully compensatory fee," normally encompassing "all hours reasonably expended on the litigation" and "[i]n these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in his lawsuit . . . . Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters."[89] To that end, the Court held "[w]here the plaintiff has failed to prevail on a claim that is distinct in all

respects from this successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee" but "[w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised."[90]

"[T]he Supreme Court has rejected the notion that the fee award should be reduced 'simply because the plaintiff failed to prevail on every contention raised in the lawsuit.'"[91] "[C]ourts should not reduce fees simply because some of a prevailing party's related claims are unsuccessful."[92] "[W]here the successful and unsuccessful claims involve a common core of facts, the lawsuit cannot be viewed as a series of discrete claims and the district court should instead focus on the significance of the overall relief obtained."[93] However, "an attorney's work on unsuccessful claims not related to the claims on which the attorney succeeded is not compensable, because such work 'cannot be deemed to have been expended in pursuit of the ultimate result achieved.'"[94]

In applying the *Hensley* analysis, we are mindful of the Court's caution "the result is what matters" and "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon . . . provides little aid in determining what is a reasonable fee in light of all the relevant factors. Nor is it necessarily significant that a prevailing plaintiff did not receive all the relief requested."[95] Following *Hensley*, our Court of Appeals held "mathematically deducting fees proportional to a plaintiff's losing claims is 'too simplistic and unrealistic.'"[96]

Applying the first prong of the *Hensley* test, we ask whether M3 prevailed on its claims against Atlas and Ms. Hart. On the second *Hensley* question, we ask whether M3 achieved a level of success making the hours reasonably expended a satisfactory basis for a fee award.

We will not apply a mechanical 95% blanket reduction argued by Atlas and Ms. Hart based on M3's estimated $1.5 million in lost revenue from the BluePrint account identified in its Rule

26 initial disclosures. M3 argues the 95% discount formula is not based on the language of the offer of judgment and, even if we adopted Ms. Hart's and Atlas's arbitrary discount formula, the initial damages estimate is based on lost revenue not lost profits sought by M3 as damages.[97] M3 argues Ms. Hart and Atlas conflate the two concepts and fail to account for the expenses on the BluePrint account that would have been subtracted from revenue amount to calculate recoverable lost profits.[98] M3 also sought multiple damages under the statutes as well as an alternative of ordering Atlas to disgorge its profits.

M3 either did not calculate or provide a damages model based on lost profits. It instead agreed to the $75,000 offer of judgment. It today offers no response to whether its settlement is anywhere near its claimed lost profits. But neither do Ms. Hart or Atlas, who would know the profit margin and disgorgement amount. No party offers a basis to find the requested fees should be discounted at some arbitrary percentage when we do not have the factors in the equation. Ms. Hart and Atlas fail to support their objection based on success compared to a result at trial based on lost profits or disgorgement. We are also mindful M3 accepted the $75,000 presumably believing it to be fair number in comparison to its as-yet undisclosed damages model. We decline to guess absent proof the agreed judgment amount is significantly less than damages recoverable at trial.

### 2. We partially sustain Defendants' objections to vague entries.

Atlas and Ms. Hart object to vague time entries of its attorneys Mr. Welter and Mr. Goldstein in the amount of $7,647.[99] Most of the time entries include the description "attention to" various tasks such as "case status and strategy," preparation of discovery responses and document production, and case management issues. M3 responds Attorneys Welter's and Goldstein's time entries provide the specificity required by our Court of Appeals.[100]

Attorneys seeking fees must document their hours "with sufficient specificity."[101] Time entries must "be specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed."[102] The specificity required need not be exacting: "a fee petition should include some fairly definite information as to the hours devoted to various general activities."[103] It is not necessary "to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney."[104]

Time entries such as "miscellaneous research, telephone conversations, and conferences concerning facts, evidence, and witnesses" are sufficiently specific.[105] Entries such as "att[entio]n to papers" and "att[entio]n to status" without indicating "what 'papers' or 'status'" to which the attorney attended, and entries such as "e-mails," "conference call," "correspondence" and "review papers" are insufficient to determine if the hours claimed are unreasonable for the work performed.[106]

Guided by our Court of Appeals in *Tenafly*, we strike time entries which are too vague as to deprive us of the ability to determine whether the time billed is unreasonable for the work performed:

- November 20, 2020 by Attorney Welter for "attention to updates to RS declaration." M3 does not tell us who "RS" is or what declaration is referred to, and we cannot find a pleading in this action with a declaration filed by a "RS." We debit $45 from his requested fee.

- March 4, 2021 by Attorney Welter for "attention to litigation, discovery, and motion strategy" as we are unclear as to what he is referring to particularly given he also billed on the same day for "attention to plaintiff's discovery responses and document production." We debit $95 from his requested fee.

- Two entries on April 28, 2021 by Attorney Welter described as "email to local counsel re: upcoming projects" and "telephone conference with local counsel regarding potential drafting project; case management." Both entries referring to unidentified "projects" are insufficient to determine whether the hours claims are reasonable. We debit $285 from his requested fee.

The remaining challenged entries provide details as to what counsel is working on as the case proceeded to the defined offer of judgment. We are not persuaded by Ms. Hart's and Atlas's claim specific charges are vague. For example, Ms. Hart and Atlas claim "attention to strategy regarding uploads of previous productions to Logikcull; review of RFP 30.pst files in Logikcull" is somehow too vague to understand what the 1.9 hours incurred by Attorney Goldstein related. This description provides sufficient information to evaluate the reasonableness of a fee.

We sustain the objections in part as noted above and deduct $425.00 from the requested fees based on vagueness.

### 3.    We overrule Defendants' objection to time billed to "ineligible claims."

Atlas and Ms. Hart argue we must deduct $16,794 in attorney's fees for work ineligible for fee-shifting: time relating to M3's common law breach of contract of breach of loyalty claims; time related to responding to affirmative defenses, Ms. DasGupta's liability, antitrust issues, and analysis of a "call log" of phone calls between Ms. Hart and Ms. DasGupta correlating to the time Ms. Hart spent on M3's database.[107] Atlas and Ms. Hart argue work M3's counsel expended on refuting affirmative defenses and antitrust issues relate to M3's breach of contract claims and not the statutory claims; time spent on evidentiary issues do not relate to the statutory claims; and M3's counsel spent an "inordinate amount" of time analyzing Ms. Hart's phone calls relating to its breach of loyalty claims and not the statutory claims. M3 responds the parties' Rule 68 offer of judgment controls, and the terms of the offer do not limit the scope of recoverable attorney's fees.

We reviewed Ms. Hart and Atlas's specifically challenged time entries.[108] Their challenges are based upon an idea they should only have to pay attorney's fees for work allocated to the statutory claims. But they did not draft their offer of judgment as such. Their offer of judgment requires them to pay all reasonable attorney's fees applicable to the claims in the case. We

appreciate they disagree with research concerning third parties, anti-trust implications, and analysis of phone calls. But guided by the Supreme Court's analysis in *Hensley*, we cannot start second guessing counsel's theories as to how to present their case. This is not time billed after M3 knew of possible new claims not going forward. These time entries are at the beginning of the matter with possible multiple state law implications and potential lawsuits against third parties. These claims arise from the same core of operative facts. We cannot sever these claims or render them "ineligible" because the time entries do not reference the statutory schemes. Ms. Hart and Atlas did not so define their offer of judgment and we will not strike time specifically billed and identified in furtherance of recovery under viable theories.

We overrule Ms. Hart and Atlas's objection based on ineligible claims in its entirety.

### 4.     We overrule Defendants' objections to unsuccessful motions.

Atlas and Ms. Hart asks us to deduct $18,436 in fees related to unsuccessful or so-called "frivolous" motions identified as M3's motion for preliminary injunction and two motions M3 did not bring: a spoliation motion and a motion to compel Hewlett-Packard to produce documents relating to its servicing of Ms. Hart's Atlas laptop. M3 disagrees its motions were frivolous, arguing we did not make a finding of a frivolous motion, the nature of the case required it to take discovery on the contents of Ms. Hart's electronic devices, and Atlas and Ms. Hart resisted and delayed discovery increasing the cost of litigation.

Atlas and Ms. Hart do not provide legal authority to support their argument we may strike unsuccessful or frivolous motions. To the extent they argue success on the preliminary injunction motion as a dispositive factor, we deny it. The failure to succeed on a motion is insufficient to warrant a fee reduction under *Hensley*.[109]

With regard to Atlas and Ms. Hart's argument they should not be charged with fees related to M3's "frivolous" motions, we turn to the fee-shifting provisions in civil rights statutes for direction. Plaintiffs may recover fees under 42 U.S.C. § 1988 (the civil rights fee-shifting statute) even where they are not successful on every claim.[110] The Supreme Court instructs "[a] court should compensate the plaintiff for the time [its] attorney reasonably spent in achieving a favorable outcome" even if it did not prevail on every claim.[111] Unsuccessful claims do not vitiate the payment of attorney's fees reasonably incurred by a plaintiff in remedying its civil rights.

The same is true for defendants in civil rights actions. A successful defendant may recover fees when a plaintiff's claims are "frivolous, unreasonable, or without foundation" or where "the plaintiff continued to litigate after it clearly became so."[112] This is so even where a plaintiff's claim includes non-frivolous claims.[113] Under *Hensley*, there is a "possibility that a plaintiff might prevail on one contention in a suit while also asserting an unrelated frivolous claim" and, in that case, "a court could properly award fees to both parties—to the plaintiff, to reflect the fees he incurred in bringing the meritorious claim; and to the defendant, to compensate for the fees he paid in defending the frivolous one."[114]

In *Barnes Foundation v. Township of Lower Merion*, our Court of Appeals identified several factors to determine whether a plaintiff's civil rights claim is frivolous.[115] There are no "strict rules" and we must make determinations of frivolity on a case-by-case basis.[116] In doing so, we consider whether "the plaintiff established a prima facie case, the defendant offered to settle, the trial court dismissed the case prior to trial or the case continued until a trial on the merits . . . [,] the question in issue was one of first impression requiring judicial resolution, the controversy is based sufficiently upon a real threat of injury to the plaintiff, the trial court has made a finding the suit was frivolous . . ., and the record supports such a finding."[117]

M3 sought a preliminary injunction claiming Ms. Hart misappropriated its confidential and trade secret information before leaving M3 for Atlas. At our conference call with the parties, counsel for M3 conceded it did not, at that time, have evidence of Defendants' possession of M3 materials precluding us from entering injunctive relief. M3 withdrew its motion for preliminary injunction without prejudice to be renewed with supporting evidence.[118] M3 accepted the offer of judgment before renewing its motion for a preliminary injunction.

M3 submitted attorney time records for work on two motions never filed: a spoliation motion and a motion to compel Hewlett-Packard to produce documents relating to its servicing of Ms. Hart's Atlas laptop. Applying the *Barnes Foundation* factors, we conclude M3's motions are not frivolous and should not be declined simply because their lack of success. These claims all arise from the same core fact issues. M3's counsel cannot research and pursue claims, and then be penalized for their efforts. Having reviewed the entirety of the challenged time entries, we find no specific time entry which does not further M3's claims. We cannot strike time entries as though this is a contingency fee case severed issue by issue. These are not different claims where one has merit and the other lacks merit. The claims here arise from the same facts and researching and pursing legal and factual concerns is not only compensable but mandated by counsel's obligations of diligence under the Rules of Professional Conduct.

We overrule Ms. Hart's and Atlas's objection based on their view of the success or frivolous nature of denied motions.

### 5.    We strike fees billed to the wrong case.

Atlas and Ms. Hart ask us to strike four entries amounting to $1,126.50 in attorney's fees relating to M3's case against Ms. Haunert in the District of Columbia litigation and other unrelated cases. M3 concedes $47.50 in attorney's fees incurred by Attorney Welter on March 8, 2021

described as "review and respond to email correspondence from Mr. Richter regarding errata sheet" pertains to another case and applied in error.

With that exception, M3 contends the remaining time entries properly relate to this case. M3 explains the February 2, 2021 entry describing a telephone conference with its damages expert, Mr. Newman, regarding Ms. Haunert relates to damages in this case. It does not explain the other two entries describing correspondence with a Ms. Lamitina regarding a litigation hold and review and revision of a draft litigation hold notice. Atlas and Ms. Hart note the parties did not take depositions in this case and the entry regarding the litigation entered on April 9, 2021 occurred long after the commencement of this action.

As the party seeking attorney's fees, M3 has the burden of proving its request is reasonable by submitting evidence supporting the hours worked and rates claimed. Of course, hours incorrectly billed for an entirely different action would not reasonably be included in an award of attorney's fees. Since fees may not be awarded for services on unsuccessful claims based on different facts and legal theories, fees cannot be awarded for services on entirely separate lawsuits.[119]

M3 concedes its counsel's communications with Mr. Richter should not be billed. It also fails to prove a nexus between challenged entries from April 9, 2021 and the claims against Ms. Hart and Atlas. And we cannot discern why counsel would be addressing a litigation hold in April 2021 for a case it began billing on October 20, 2020. M3 explained why it billed time towards a damages report on February 2, 2021. Attorney Welter's description of his February 2, 2021 efforts relating to an expert report specifically describe the work performed in this case.

We sustain Ms. Hart's and Atlas's objections in part to the four challenged entries based on the wrong matter. We strike $414.00 from the requested fees after striking Attorney Welter's challenged entries on March 8 and April 9, 2021 and Attorney Goldstein's April 9, 2021 entries.

### 6. We grant in part Defendants' objections to time attributed to non-attorney work or excessive billing possibly reflecting a billing error.

Atlas and Ms. Hart object to $3,727 in attorney's fees they contend are for non-attorney, administrative work such as calendaring deadlines or downloading/uploading documents. For example, attorneys billed time for "[d]ocketing of service of defendants' discovery requests in Compulaw and review of deadlines"; "download defendants' document production"; "docketing of scheduling order deadlines in Compulaw"; and "attention to upload of defendant's production by bates number in Logikull to organize document review."[120] Atlas and Ms. Hart object to an entry based on excessive time billed to one task possibly reflecting a billing error. Atlas and Ms. Hart do not identify the excessive time, but we presume it is the 7.4 hours billed on February 3, 2021 to "draft and finalize Rule 26(f) Joint Report."

M3 responds time entries referred to as administrative work do not represent common administrative tasks like photocopying or answering the phone. It contends the majority of the objected-to time entries show senior attorneys interpreting our orders, guiding the discovery process, and performing work a general business client would not want "delegated from a lawyer-member of the firm." It also disputes entries are excessive.

Our Court of Appeals confirms we should not approve attorney's fees for tasks "easily delegable to non-professional assistance."[121] It is unreasonable to bill attorney time for tasks which can effectively be performed by administrative assistants, paralegals, or secretaries.[122] "Hours that would not generally be billed to one's own client are not properly billed to an adversary."[123]

Again, it is M3's burden to show the reasonableness of its fees. It fails to explain how a partner, billing at $475 per hour, performing tasks such as downloading documents and docketing orders is reasonable. We sustain Ms. Hart and Atlas's objections to Attorney Welter's December 14, 2020, February 11, 2021, and May 7, 2021 time entries and strike a total of .6 hours, reducing the requested amount by $280.00. We also reduce Ms. Johnson's billing of 7.4 hours to draft and finalize an eleven-page Rule 26(f) Report on February 3, 2021 after she already billed M3 for 1.4 hours for the same report on February 2, 2021. And Attorneys Welter and Goldstein billed several hours reviewing and revising this one eleven-page document. We find, absent contrary sworn reasons, drafting a Rule 26(f) report in this case should not exceed billing more than 4 hours at $295.00 an hour. We strike six hours of Ms. Johnson's time at $295.00 an hour and debit $1,770.00 from the requested fee as excessive. We also strike twenty-four minutes billed on February 11 and 18, 2021 to downloading and docketing at a $475.00 rate, thus reducing the recoverable fees by another $190.00.

We grant Ms. Hart and Atlas's objections to these challenged entries in part and deduct $2,240.00 from the requested fees.

### C. Attorney's fees originally calculated as "costs" are properly billed as fees.

M3 seeks $69,547.64 in costs including damages expert fees, local counsel Buchanan Ingersoll's costs, e-Discovery costs, and process server fees.[124] M3 originally accounted for legal services paid to the Robert Half staffing agency and its local counsel's attorney's fees as costs.

Atlas and Ms. Hart object to $24,844.52 of these costs: $9,336.39 billed by the Buchanan Ingersoll & Rooney firm as local counsel and $15,508.13 in contract attorney's fees billed by the Robert Half staffing agency.

### *Contract attorney Pierre Zalzal's work through Robert Half agency.*

Atlas and Ms. Hart argue M3 double-counted its payments to Robert Half as both attorney's fees *and* costs. They ask us to reduce M3's costs by $15,508.13. M3 asserts it did *not* double count the Robert Half invoices as both fees and costs, contending it accounted for the Robert Half invoices as costs only. It suggests if we determine work performed by contract attorneys should be treated as attorney's fees rather than costs, then we should award the full amount paid to Robert Half as reasonable attorney's fees for the legal services of Pierre Zalzal in the Robert Half invoices. Atlas and Ms. Hart do not object to the reasonableness of the entries billed by the Robert Half contract attorneys; they object only to the double-counting.[125]

A review of M3's fee petition and supplemental filings show it engaged Robert Half to provide legal services through Attorney Zalzal. Attorney Zalzal billed time to M3 through Robert Half from March 12 to April 23, 2021.[126] Robert Half charged M3 a total of $15,868.13 for Attorney Zalzal's services. Robert Half billed Attorney Zalzal's services at $65 per hour regular time and $95 per hour for overtime. There is no description of Attorney Zalzal's services provided to M3 through Robert Half.

Beginning April 26, 2021, Attorney Zalzal began working as an associate at the Welter Law Firm, P.C. where he is billed at $225 per hour.[127] The work he performed is described in time entries.

M3 now accounts for Attorney Zalzal's time for his work at Robert Half in the amount of $15,508.13, and his work as an associate at the Welter firm in the amount of $13,860. Atlas and M3 do not object to the reasonableness of the time, only what it perceives as double-counting fees for Attorney Zalzal's work through Robert Half.

We can only review challenges to time entries. If Ms. Hart and Atlas do not challenge the reasonableness of Robert Half time entries, we cannot strike them as vague or excessive. They are

curious entries. There is no time description and Attorney Zalzal while working for Robert Half swears he is an associate of Attorney Welter's law firm. But we do not see him billing both at Attorney Welter's firm and through Robert Half Legal at the same time.

We find no basis to strike the costs paid to Robert Half based on duplication in the time sheets.

### *Attorney time billed by local counsel Buchanan Ingersoll.*

Atlas and Ms. Hart object to Buchanan Ingersoll's fees as counted by M3 as costs rather than attorney's fees. Atlas and Ms. Hart ask that we analyze Buchanan Ingersoll's time as attorney's fees and decline to award them to M3 for the same reasons they seek to exclude the other attorney's fees.

In M3's supplemental response, it concedes it mistakenly combined Buchanan Ingersoll's attorney's fees and costs and attributed the combined total to "costs."[128] M3 now calculates the total amount of attorney's fees to its local counsel Buchanan Ingersoll as $8,210.50.[129] M3 calculates Buchanan Ingersoll's costs as $1,125.89. M3 asks us to award it the full amount of Buchanan Ingersoll's fees as reasonable.

Atlas and Ms. Hart do not challenge Buchanan Ingersoll's costs. They challenge the reasonableness of Buchanan Ingersoll's attorney's fees based on their objections to the Welter firm's fees: attorney's fees should be reduced to reflect the limited nature of the relief obtained; vague time entries; time entries for ineligible claims; unsuccessful or frivolous motions; time billed to different actions; and non-attorney work or excessive billing. A review of Buchanan Ingersoll's time sheets confirm limited concerns with billing at high rates for non-attorney work. We deduct time billed to receipt of a proof of service and docketing on November 24 and December 4, 2020 for a total of $213.50; retrieving and organizing pleadings on December 7 and 14, 2020 by a person

billing at $305 an hour and then $330 an hour on January 12, 19, and February 9, 10 2021 warranting a $287.00 deduction; and, downloading and indexing by a $330 an hour professional on February 22, and March 2, 2021 warranting a $99.00 deduction. We deduct $599.50 for fees billed by local counsel Buchanan Ingersoll.

### D.    The offer of judgment excludes post-judgment interest.

Atlas and Ms. Hart argue M3 is not entitled to post-judgment interest under the language of the offer of judgment providing: "Acceptance of this offer of judgment will operate to waive Plaintiff's rights to any claim for interest on the amount of the judgment."

M3 responds it did not request post-judgment interest. Curiously, M3's proposed order submitted with its fee petition includes an award of post-judgment interest under 28 U.S.C. § 1961 from May 11, 2021 to the date of payment.[130] M3 concedes the language of the  offer of judgment controls and post-judgment interest is not explicitly included in the offer. We will not award post-judgment interest.

## III.    Conclusion

Ms. Hart and Atlas's counsel prepared and delivered an offer of judgment with the ambiguous term "applicable." They could have reached a settlement agreement. But they chose to use an ambiguous term and then try to block all or almost all fees and costs. We interpret the accepted Rule 68 offer of judgment as a contract. We must interpret the ambiguous term against the drafter who could have made clear their offer did not include payment of fees. They instead offered to pay "applicable" fees. They could not pay "applicable" fees under their interpretation as there would never be fees.

After evaluating Ms. Hart and Atlas's several objections and sustaining some but overruling others, we find M3 demonstrated the reasonableness of fees of $238,560.13 and costs of $69,547.64.

---

[1] ECF Doc. No. 1 ¶ 9.

[2] *Id.* ¶ 17.

[3] *Id.* ¶ 18.

[4] *Id.*

[5] *Id.* ¶¶ 27, 47.

[6] *Id.* ¶ 19.

[7] *Id.*

[8] *Id.* ¶ 20.

[9] ECF Doc. No. 16-3 at 6, ¶ 3(a)-(b) (using the pagination assigned by the CM/ECF docketing system).

[10] ECF Doc. No. 1 ¶ 28.

[11] *Id.* ¶ 29.

[12] *Id.* ¶ 30.

[13] *Id.*

[14] *Id.* ¶ 31.

[15] *Id.* ¶¶ 32–33.

[16] *Id.* ¶¶ 34–35.

[17] *Id.* ¶ 36. M3 sued Savanah Haunert in the United States District Court for the District of Columbia.

[18] *Id.*

[19] *Id.* ¶ 37.

[20] *Id.* ¶¶ 42-43.

[21] *Id.* ¶ 38.

[22] *Id.* ¶¶ 39-40.

[23] *Id.* ¶ 41.

[24] *Id.* ¶¶ 44–53.

[25] *Id.* ¶ 52.

[26] *Id.* ¶ 53, 55.

[27] *Id.* ¶ 54.

[28] *Id.* ¶ 56.

[29] ECF Doc. No. 1.

[30] 18 U.S.C. § 1836, *et seq.*

[31] 12 Pa. Cons. Stat. Ann. § 5301, *et seq.*

[32] ECF Doc. No. 15.

[33] ECF Doc. No. 19.

[34] ECF Doc. No. 26.

[35] ECF Doc. No. 34.

[36] ECF Doc. No. 37.

[37] ECF Doc. No. 49-1.

[38] *Id.*

[39] ECF Doc. No. 49.

[40] EFC Doc. No. 54.

[41] ECF Doc. No. 49-1.

[42] EFC Doc. No. 56.

[43] ECF Doc. No. 56-1.

[44] ECF Doc. Nos. 62, 64.

[45] The "American Rule"—each litigant pays its own attorney's fees unless a statute or contract dictates otherwise—is the principal consideration concerning the award of attorney's fees absent a statute allowing fee shifting. *Hardt v. Reliance Stand. Life Ins. Co.*, 560 U.S. 242, 252-53 (2010). ECF Doc. No. 59.

[46] 12 PA. CONS. STAT. ANN. § 5305.

[47] 18 U.S.C. § 1836(b)(3)(D).

[48] ECF Doc. No. 59.

[49] *Id.*

[50] ECF Doc. No. 59 at 7.

[51] Atlas and Ms. Hart explain they arrived at the 95% reduction as the percentage of the $75,000 offer of judgment accepted by M3 which is only 5% of "one measure of its running damages calculation early in the litigation." ECF Doc. No. 59 at 2. It appears Atlas and Ms. Hart base this calculation on M3's initial disclosures under Federal Rule of Civil Procedure 26 estimating its lost revenues on the BluePrint account at approximately $1.5 million from 2020 to the present. *See* ECF Doc. No. 59-1 at 11 (using the page number assigned by the CM/ECF docketing system).

[52] ECF Doc. No. 59 at 13.

[53] *Id.* at 7–12.

[54] *Id.* at 12-13.

[55] ECF Doc. No. 60 at 2.

[56] *Id.*

[57] ECF Doc. No. 62.

[58] *Id.*

[59] ECF Doc. No. 64.

[60] The Defend Trade Secrets Act and the Pennsylvania Uniform Trade Secrets Act contain fee-shifting provisions. The aim of such provisions is to enable private parties to obtain legal help in seeking redress for injuries committed in violation of federal or state laws. Lawyers will be willing to take a case if assured by statute they will be paid a reasonable fee. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565 (1986).

[61] *Miller v. City of Portland*, 868 F.3d 846, 851 (9th Cir. 2017); *see also Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 163 (2016) (applying principles of contract law to Rule 68 offer of judgment).

[62] *Lima v. Newark Police Dep't*, 658 F.3d 324, 330 (3d Cir. 2011) ("ambiguities in Rule 68 offers are to be resolved against the offerors") (citing *Nordby v. Anchor Hocking Packaging Co.*, 199 F.3d 390, 391-93 (7th Cir. 1999)).

[63] ECF Doc. No. 49.

[64] *Wert v. Manorcare of Carlisle, PA, LLC*, 124 A.3d 1248, 1259 (Pa. 2015). We apply Pennsylvania law to the offer of judgment which Defendants' counsel executed in Philadelphia. *See* ECF Doc. No. 49-1.

[65] *Wert*, 124 A.3d at 1259.

[66] *Id.*

[67] *Id.* at 1260.

[68] 868 F.3d 846 (9th Cir. 2017).

[69] *Id.* at 848.

[70] *Id.*

[71] *Id.*

[72] *Id.* at 850 (footnote omitted).

[73] *Id.* at 852.

[74] *Miller*, 868 F.3d at 851.

[75] *Id.* at 852 (citations omitted).

[76] *Steiner v. Lewmar, Inc.,* 816 F.3d 26, 32 (2d Cir. 2016) (*quoting Nusom v. Comh Woodburn, Inc.*, 122 F.3d 830, 833-34 (9th Cir. 1997)).

[77] *See Id.*

[78] *Wash. Hosp. v. White*, 889 F.2d 1294, 1300 (3d Cir. 1989).

[79] *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir. 1990) *(*citing *Blum v. Stetson*, 465 U.S. 886, 897 (1984)).

[80] *Clemens v. N.Y. Cent. Mut. Fire Ins. Co.*, 903 F.3d 396, 400 (3d Cir. 2018) (quoting *Rode,* 892 F.2d at 1183.

[81] *United States ex rel. Palmer v. C&D Techs., Inc.*, 897 F.3d 128, 139 (3d Cir. 2018) (quoting *Rode*, 892 F.2d at 1183)).

[82] *Clemens*, 903 F.3d at 400.

[83] *United States v. Eleven Vehicles, Their Equip. & Accessories*, 200 F.3d 203, 211-12 (3d Cir. 2000).

[84] ECF Doc. No. 59 at 7.

[85] *Hensley,* 461 U.S. at 436.

[86] *Id.* at 434.

[87] *Id.*

[88] *Id.* at 434-35.

[89] *Id.* (footnote omitted).

[90] *Id.* at 440.

[91] *Ida D. v. Rivera*, No. 17-5272, 2019 WL 2615481, at *10 (E.D. Pa. June 26, 2019) (citing *Blum v. Witco Chem. Corp.*, 829 F.2d 367, 378 (3d Cir. 1987)).

[92] *Leaman v. Wolfe*, No. 13-975, 2017 WL 528280, at *6 (E.D. Pa. Feb. 9, 2017) (citing *McKenna v. City of Phila.*, 582 F.3d 447, 457 (3d Cir. 2009)).

[93] *Lejeune G. v. Khepera Charter Sch.*, 420 F. Supp. 3d 331, 344 (E.D. Pa. Sept. 24, 2019) (citing *I.W. v. Sch. Dist. of Phila.*, No. 14-3141, 2016 WL 147148, at *20 (E.D. Pa. Jan. 13, 2016)).

[94] *Leaman*, 2017 WL 528280, at *6 (quoting *McKenna*, 582 F.3d at 455).

[95] *Hensley,* 461 U.S at 435, n. 11.

[96] *McCutcheon v. America's Servicing Co.*, 560 F.3d 143, 151 (3d Cir. 2009) (quoting *W. Va. Univ. Hosps., Inc. v. Casey*, 898 F.2d 357, 363 (3d Cir. 1990) (addressing fee petition in Truth in Lending Act case); *see also Hahnemann Univ. Hosp. v. All Shore, Inc.*, 514 F.3d 300, 311 (3d Cir. 2008) (rejecting "proportionality rule for attorney's fees under ERISA").

[97] ECF Doc. No. 60 at 5-6.

[98] *Id.*

⁹⁹ ECF Doc. No. 59-1, Ex. E at 47 (using the pagination assigned by the CM/ECF docketing system).

¹⁰⁰ ECF Doc. No. 60 at 7-8.

¹⁰¹ *Washington v. Phila. Cnty. Ct. of Com. Pleas,* 89 F.3d 1031, 1037 (3d Cir. 1996) (quoting *Keenan v. City of Phila.*, 983 F.3d 459, 472 (3d Cir. 1992)).
¹⁰² *Clemens*, 903 F.3d at 401 (quoting *Washington*, 89 F.3d at 1037).

¹⁰³ *Tenafly Eruv Ass'n v. Borough of Tenafly*, 195 F. App'x. 93, 100 (3d Cir. 2006) (quoting *Washington*, 89 F.3d at 1037).

¹⁰⁴ *Id.* (citing *Washington*, 89 F.3d at 1037–38).

¹⁰⁵ *Rode,* 892 F.2d at 1191, n. 13; *see also McGuffey v. Brink's, Inc.*, 598 F. Supp. 2d 659, 671 (E.D. Pa. 2009) (finding challenge to 18.8 hours of billed time described as "Research," "Review research," "Research ADEA," or "Research ERISA" sufficient for the court to determine whether the costs claims were unreasonable for the work performed).

¹⁰⁶ *Tenalfy Eruv Ass'n, Inc.*, 195 F.App'x at 100-01 (quoting *Washington*, 89 F.3d at 1037).

¹⁰⁷ ECF Doc. No. 59-1 at 51 (using the pagination assigned by the CM/ECF docketing system).

¹⁰⁸ *Id.* at 52–56.

¹⁰⁹ *Ida D. v. Rivera*, No. 17-5272, 2019 WL 2615481, at *10 (E.D. Pa. June 26, 2019) (citing *Blum v. Witco Chem. Corp.*, 829 F.2d 367, 378 (3d Cir. 1987)).

¹¹⁰ *Fox v. Vice*, 563 U.S. 826, 834 (2011).

¹¹¹ *Id.*

¹¹² *Delaware Riverkeeper Network v. Sunoco Pipeline L.P.*, No. 18-2447, 2020 WL 5653451, *2 (E.D. Pa. Sept. 23, 2020) (quoting *Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 422 (1978)).

¹¹³ *Fox*, 563 U.S. at 834–85.

¹¹⁴ *Id.* at 835 (citing *Hensley*, 461 U.S. at 435, n. 10).

¹¹⁵ 242 F.3d 151, 158 (3d Cir. 2001).

¹¹⁶ *Id.* (quoting *Sullivan v. Sch. Bd.*, 773 F.2d 1182, 1189 (11th Cir. 1983)).

¹¹⁷ *Id.* (citations omitted).

[118] ECF Doc. No. 34.

[119] *See Hensley,* 461 U.S. at 434-35.

[120] ECF Doc. No. 59-1 at 68 (using the pagination assigned by the CM/ECF docketing system).

[121] *Tenafly Eruv Ass'n, Inc.*, 195 F. App'x at 101 (*quoting Halderman v. Pennhurst State Sch. & Hosp.,* 49 F.3d 939, 942 (3d Cir. 1995)). In *Tenafly*, the court reduced attorney-billed administrative time by two-thirds.

[122] *Loughner v. U. of Pittsburgh,* 260 F.3d 173, 180 (3d Cir. 2001).

[123] *Pub. Int. Rsch Grp. of N.J., Inc. v. Windall,* 51 F.3d 1179, 1188 (3d Cir. 1995).

[124] ECF Doc. No. 64.

[125] Atlas and Ms. Hart object to 15.9 hours of Attorney Zalzal's work from April 26, 2021 through May 4, 2021 in the amount of $3,577.50 as "ineligible."

[126] ECF Doc. No. 56-9 at 37 through 50 (using the pagination assigned by the CM/ECF docketing system).

[127] ECF Doc. No. 56-2 at 29-30 (using the pagination assigned by the CM/ECF docketing system).

[128] ECF Doc. Nos. 62, 64. Time entries from Buchanan Ingersoll are attached to M3's petition at ECF Doc. No. 56-9 at 3 through 26 (using the pagination assigned by the CM/ECF docketing system).

[129] ECF Doc. No. 64.

[130] ECF Doc. No. 56-10.